3:25-mj-00265

DISTRICT OF OREGON, ss:        AFFIDAVIT OF RYAN C. HALL

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Ryan C. Hall, being duly sworn, do hereby depose and state as follows:

## Introduction and Agent Background

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since May 2017. I am presently assigned to the Portland Division of the FBI, and specifically to the Bend Resident Agency. During my employment, I have investigated and have assisted others in investigating a range of federal crimes, including drug and gang-related offenses; felons in possession of a firearm; child pornography; and domestic violence. I have conducted numerous threat assessments that have been reported to the FBI.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Jordan James Scott, for the crime of Assault by Strangulation, in violation of Title 18, United States Code § 113(a)(8), As set forth below, there is probable cause to believe, and I do believe, that Scott, committed Assault by Strangulation, in violation of Title 18, United States Code, Section § 113(a)(8).

## Applicable Law

3.      Title 18 U.S.C. 113(a)(8), "Assault by Strangulation," provides, in relevant part, that "Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault by strangling or attempting to strangle or suffocate shall be imprisoned for not more than 10 years."

4.      Jurisdiction for these crimes in Indian Country is governed by 18 U.S.C. 1152 – the Indian Country Crimes Act. The Confederated Tribes of the Warm Springs Indian

Reservation (CTWS) is Indian Country within the special maritime and territorial jurisdiction of the United States as defined by 18 U.S.C. § 1151. Here, there is federal jurisdiction because the crimes occurred in Indian Country and were committed against an enrolled member of the Confederated Tribes of Warm Springs, namely Adult Victim 1 (AV1).

## Statement of Probable Cause

5. On September 21, 2025, Warm Springs Police officers were dispatched to a residence within the boundaries of the Warm Springs Indian Reservation. Officers contacted AV1 and Jordan James Scott (Scott) outside of the residence. Officers observed marks on AV1's neck. AV1 would not provide statements to police, but they obtained Body Worn Camera (BWC) footage of her injuries. AV1 also refused medical evaluation. Officers observed scratches on Scott's neck and face. Due to the lack of statements and the injuries observed on AV1 and Scott, officers arrested both individuals and lodged them at Jefferson County Jail, Jefferson County, Oregon. Officers notified me of the incident and advised that Scott was not a Warm Springs enrolled tribal member and that AV1 was a Warm Springs enrolled tribal member. I informed the officers that I would contact both individuals at Jefferson County Jail.

6. On September 22, 2025, I interviewed AV1 in the pre-booking area of the Jefferson County Jail. Detective Joshua Capehart with Jefferson County Jail assisted me with the interview and used his BWC to obtain a recording of AV1's statement. I observed red marks on AV1's neck. AV1 had a bruise on her right cheek and several bruises on her arms. AV1 also had several cuts on her arm that were not associated with injuries during the incident with Scott.

7. AV1 advised that on Saturday 20, 2025, through Sunday, September 21, 2025, AV1 and Scott consumed alcohol. AV1 went to sleep around 1:00am. AV1 woke up

**Affidavit of Ryan C. Hall**                                                                                                                              **Page 2**

intermittently starting around 9:00am on September 21, 2025, until around 11:00am. Scott woke up around the same time. AV1 was scrolling through Scott's phone when she located text messages shared between Scott and an unidentified female. Scott claimed the female lived in Germany, but AV1 said she knew the unidentified female lived in Madras, Oregon. The conversation between Scott and the unidentified female led to an argument between AV1 and Scott. AV1 attempted to leave the room, but Scott barred AV1 from leaving the room. AV1 slapped Scott in the face. AV1 then ended up wrestling with Scott on the bed. They wrestled for about five minutes because they were arguing throughout the altercation. Scott then pinned AV1 to the bed. AV1 showed me the bruises from Scott grabbing her arms. Scott then attempted to strangle AV1 by putting his arm around AV1's neck. AV1 bit Scott's arms to get him to release his grip. Scott ended up on top of AV1 and put both his hands on her neck. AV1's breathing was impeded by Scott's arms and hands. Scott then got up and AV1 told him to get his stuff and get out of her house. Scott grabbed his stuff to leave and AV1 picked up her phone and called the police. AV1 went outside with Scott, and said they deescalated. They hugged, kissed, and apologized to each other. I asked if there were any witnesses within the residence. AV1 said Scott's cousin was asleep on the couch during the altercation but did not witness anything. Officers then arrived on scene where they were eventually arrested.

       8.      On September 22, 2025, I interviewed Scott in the pre-booking area of the Jefferson County Jail. Detective Joshua Capehart with Jefferson County Jail assisted me with the interview and used his BWC to obtain a recording of Scott's statement. Scott had noticeable scratches on his face, arms, neck, and hands. I provided Scott with his *Miranda* warnings from a prepared card. He affirmed he understood his rights and consented to be interviewed. After the

*Miranda* warnings, I told Scott that although he was in jail, his statement was voluntary, and he could end the interview at any time. I further reiterated that if he wanted an attorney present during the interview he could request one at any time.

9. Scott said he and AV1 consumed alcohol on September 20, 2025, and into the morning of September 21, 2025. Scott woke up around 8:00 or 9:00am. Scott and AV1 began arguing about a girl that texted Scott. AV1 grabbed Scott's phone. AV1 threw Scott's phone on a previous occasion so he was concerned she was going to do it again. Scott and AV1 struggled over the phone. Scott believed the injuries on his face, arms, neck, and hands were from the struggle over the phone, but his memory was hazy. Scott said he eventually picked AV1 up from behind in a bear hug to calm her down. They ended up on the bed. I asked Scott why AV1 had injuries on her neck. Scott said that AV1 liked for Scott to put his hands on AV1's neck when they had sex. Scott said he and AV1 had sex on September 21 around 5:00am or 6:00am. Scott said he did put his hands on AV1's neck while they were having sex, but only put light pressure on AV1's neck. I told Scott that the marks on her neck were too substantial to have occurred from light pressure during sex. Scott said she could have the injuries from when he was defending himself while trying to get his phone from her but referenced that his memory was little hazy from the whole incident and that it all happened quickly. AV1 began throwing Scott's clothes out of the front door of the residence. Scott went to collect his things and AV1 called the police. They waited for the police outside of the residence together.

10. AV1's Blood Alcohol Content (BAC) was .13 when AV1 was lodged at Jefferson County Jail. Scott's BAC was .097 when he was lodged into Jefferson County Jail.

///

**Affidavit of Ryan C. Hall**  Page 4

**Conclusion**

11.     Based on the foregoing, I have probable cause to believe, and I do believe, that Jordan James Scott committed assault by strangulation, in violation of Title 18, United States Code, Sections 113(a)(8) and 1152. Therefore, I request that the Court issue a criminal complaint and arrest warrant for Jordan Scott.

12.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Pamela Paaso, and AUSA Paaso advised me that in her opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed. R. Crim. P. 4.1*
Ryan C. Hall
Special Agent, FBI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __6:30__ a.m./~~p.m.~~ on __Sept. 22__, 20__25__.

_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Affidavit of Ryan C. Hall**                                                                 **Page 5**